## THE W. F. STRANG.

## THE J. C. NICHOLS.

## THE CHRISTINE OLSEN.

## THE DYNAMIC.

### No. A-17059.

District Court, E. D. New York.

July 26, 1946.

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for libelant.

Macklin, Brown, Lenahan & Speer, of New York City (Leo F. Hanan, of New York City, of counsel), for claimant Southern States Towing Lines, Inc., owners of the Christine Olsen.

KENNEDY, District Judge.

This is a cause of collision. The barges Strang and Nichols and the tug Dynamic are in common ownership. At about 3:10 A. M. on November 2, 1943, Dynamic left lock 7 in the State Barge Canal bound west with five light barges in tow. The first tier, 20 feet astern of Dynamic, consisted of the barge W. F. Strang on the port hawser, and Kenwood on the starboard hawser. Astern of Strang was the wooden barge J. C. Nichols, and astern of Kenwood was the barge Elizabeth L. Mary N., a wooden barge equipped with a tank, was astern of Elizabeth L., and the last barge, Sanday, was being towed astern of Mary N. The overall length of the tow was 524 feet 9 inches. [1]

Just before the collision Christine Olsen, bound west, was pushing the steel barge Essex No. 8 ahead of her. [2] The overall length of Christine Olsen and her tow was 237 feet.

---

[1] The dimensions given were as follows: Dynamic, a steam tug, is 69 gross tons and 47 net tons, 63.3 feet long, 18.2 feet wide, and 8.8 feet deep. She develops 380 indicated horsepower. W. F. Strang, 240 tons, is 101.4 feet long, 21.5 feet wide and 10.7 feet deep. Kenwood, a wooden barge, some 224 tons, is 101 feet long, 21.3 feet wide and 10.2 feet deep. J. C. Nichols is a wooden barge of 248 tons, 106.6 feet long, 21.5 feet wide, and 10.8 feet deep. Elizabeth L., a wooden barge, 271 tons, is 110.2 feet long, 23 feet wide, and 10.9 feet deep. Mary N., a wooden barge equipped with a tank, displaces 369 tons. She is 115.2 feet long, 35.4 feet wide, 9 feet deep. Sanday, a wooden coal barge of 363 tons, is 114.8 feet long, 28 feet wide, and 11 feet deep.

[2] Christine Olsen, a steam tug, displaces 66 gross tons and 45 net tons, is 62 feet long, 18.5 feet wide and 8.1 feet deep. She develops 240 horsepower (indicated). Essex No. 8, 721 tons, is 175 feet long, 37.9 feet wide, and 12.2 feet deep.

According to Dynamic the collision occurred at buoy 43, which is 9,600 feet to the south of lock 7. At this point, Dynamic's pilot says there is a current which sets to the south with a force of about one knot. He claims that at about a point 2,000 feet to the north of the collision he had sighted Christine Olsen and her tow and that the latter was about 3,000 feet away from him. Dynamic at this time was making about 3.75 knots over the ground. Seeing Christine Olsen, Dynamic's pilot, according to his own claim, reduced his speed to about 3 knots over the ground. Just below buoy 43 the canal turns to the east. From lock 7 to buoy 43 the thread of the canal runs almost due north and south. After the bend has been passed by a vessel traveling east, the channel turns almost due east, and at this point it is certainly not more than 200 feet wide.

It is the claim of Dynamic that Christine Olsen, instead of waiting below the bend which I have mentioned, continued to approach northerly toward buoy 43 with the result that the port bow of Essex No. 8 was driven into the port bow of Strang (the leading port hawser barge), slid off and inflicted some superficial damage on Nichols, the second port hawser barge. Dynamic's master says the collision happened just after the starboard bow of Kenwood, which he himself had in tow, had fouled buoy 43.

This story, if it is true, puts all the fault on Christine Olsen. If Dynamic was approaching the bend with an apparently strong current under foot, Christine Olsen, under better control, should never have tried such a risky maneuver. The bargee of Strang supports the story told by Dynamic's pilot. He says that after he felt that his barge was struck (he was in his bunk at the time) he ran on deck and saw Christine Olsen to port as she passed his barge. He says that Christine Olsen was underway at the time.

There is a further suggestion of fault on the part of Christine Olsen in that she violated the practice concerning push tows in the canal because there was no deckhand on the bow of Essex No. 8 using a light to inform the master of the tug whether the barge was too far to one side or the other.

The pilot of Christine Olsen, as might be expected, tells quite a different story. He said that while he was pushing Essex No. 8 (in ballast) in the reach between buoy 32 and buoy 34, and when he was about 800 feet to the east of the latter, he saw Dynamic 2,000 feet ahead of him and quite near buoy 43. It is his claim that then he slowed, stopped, and reversed until he had his barge dead in the water and grazing buoy 34. Dynamic, he says, then continued to come on, and drove the port bow of Strang against the port bow of Essex No. 8. Christine Olsen's pilot admits that before he sighted Dynamic he was traveling "hooked up" which gave him a speed of 3.5 knots over the ground. But he denies that there is any appreciable current in the canal at this point, and he emphatically asserts that there was a deckhand on the bow of Essex No. 8 calling out to him from time to time.

It seems to me that the testimony of Christine Olsen's pilot was much more reliable than that of Dynamic's. The latter took the attitude that collision is all in the day's work. Aside from that, however, there is one fact in the case which is quite significant. Dynamic's pilot admitted that just before the collision his starboard hawser barge had fouled buoy 43, a thing which is, I am told, quite usual in the canal. But it is also quite natural that, having done this, Dynamic would bear up to port in order to swing the rest of her barges clear of the buoy. Even a slight miscalculation during this maneuver would bring about a collision almost exactly at the point where Christine Olsen's master says it occurred. And on any interpretation of the facts, if the collision occurred fairly close to buoy 34, Christine Olsen and her tow must have been dead in the water at the time.

When I questioned the master of Dynamic concerning his speed, I was guilty of some miscalculations. Nevertheless, one cannot accept his story unless one is ready to believe that Christine Olsen, admittedly moving at a slower speed than Dynamic, traveled 500 feet more than the latter be-

tween the time when the two vessels first sighted each other and the time of collision. True enough, 500 feet is not a very great distance, but it happens to approximate the distance between the point where Dynamic says the collision happened and the point where Christine Olsen places it.

Under all the circumstances I believe that Dynamic was solely at fault, that libelant is entitled to a decree against her, and that the libel should be dismissed so far as Christine Olsen is concerned. I have filed findings of fact and conclusions of law.